## THE CARROLL. THE NANSEMOND. THE ROANOKE.

(Circuit Court of Appeals, Fourth Circuit. December 14, 1908.)

### No. 854.

1. SALVAGE (§ 34*)—ELEMENTS IN DETERMINATION OF AMOUNT—TOWAGE.

   Where a salvage service rendered by a tug was in the nature of a towage, and the danger was not certain and extreme, an allowance of a lump sum as compensation, bearing some relation to the cost of the service if rendered under a contract, is fairer than a percentage of the value of the salved property.

   [Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 80–83; Dec. Dig. § 34.*]

2. SALVAGE (§ 51*)—SUITS FOR SALVAGE—APPEAL—REVIEW.

   A salvage award made by a judge who saw the witnesses and was familiar with the locality and the special perils to which the salved vessels were exposed will not be reduced by an appellate court unless clearly and greatly excessive.

   [Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 133, 134; Dec. Dig. § 51.*]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Admiralty.

For opinion below, see 163 Fed. 425.

H. H. Little (Robert M. Hughes, on the brief), for appellants.

Floyd Hughes, for appellee.

Before PRITCHARD, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

PER CURIAM. This is a case of salvage in which the claimants of the three barges salved have appealed upon the ground that the allowances in the District Court were excessive.

The steam tug Bohemia, proceeding from Baltimore to Norfolk with a tow of five barges, all loaded with coal, was, during the night of January 26, 1908, caught in a gale of wind from the south-southwest with a heavy sea when near Thimble Light, off Old Point Comfort. The wind and sea caused the barges to labor heavily and the waves to break over them. The Bohemia, although a powerful tug of the first class for Chesapeake Bay towing, was unable to make headway, and made scarcely any progress from 6 p. m. to 10:30 p. m. At this time a schooner ran across the tug tow line and parted it between the first and second barges, so that the second, third, fourth, and fifth barges went adrift. After they went adrift, the Mascot, the last barge of the

tow, sank and was lost. The Bohemia, with the one remaining barge which was still attached to her, proceeded towards Norfolk and arrived at an anchorage in safety. Three of the barges which had gone adrift put out their anchors, and, as it happened that the wind did not increase, their anchors held; the barges were, however, in dire distress and danger because of the waves breaking over them, and the crews were alarmed. At this time the tug Dauntless, which had been out to the Capes, was returning and going towards Norfolk with a barge she had in tow. As she passed the Bohemia, the Bohemia blew four whistles to her indicating that her tow was in trouble, and the Dauntless replied with four whistles indicating that she understood. The Dauntless proceeded and anchored her own barge in Hampton Roads, and immediately returned to render service. As she was returning and was passing the Bohemia, her master called to the master of the Dauntless to go to the barges and rescue their crews. The Dauntless went past the Thimble Light in search of the barges which had gone adrift, and found them about 12 o'clock midnight, anchored about three-quarters of a mile eastward of the Thimble Light. The sea was dashing over the decks and the crews were anxious to have the barges taken to a place of safety, fearing they might sink, although it does not appear that they had as yet taken water in their holds. Finding that the Roanoke had on board the master's wife, who was suffering from terror at her situation, the master of the Dauntless first went to her relief, and after difficulties in getting a line to her, which took near an hour on account of the danger of approaching her, he took her about 15 miles to a safe anchorage off Lambert's Point. Returning, he in like manner, with difficulty and some risk to his tug and crew, got a line made fast to the other two barges, and, getting up their anchors, he towed in the Nansemond and the Carroll, completing the service at about 8:30 a. m.

The Roanoke and her cargo and freight were valued at $11,000, the Carroll and her cargo and freight at $6,000, and the Nansemond and her cargo and freight at $7,625. The District Court, considering the very exposed place where the barges were anchored, and their peril, and the promptness and success of the service, held that it was a case of very meritorious salvage, and awarded as against the Roanoke, her freight and cargo, 12½ per cent., amounting to $1,375, and as against the other two barges 7½ per cent., amounting for the two to $951.87, a total of $2,326.87, and costs.

We think these sums were liberal, and more than, from the case as it appears from the printed record, we should have been disposed to have allowed. While salvage awards should be sufficiently liberal to excite the enterprise and daring of salvors, and handsomely compensate them for the risks to which they expose their lives and property, the award should not be such as to deter the vessel in distress from accepting the necessary help on account of its excessive cost. It would seem that in a case of this class, where the service rendered, although a salvage service, is not in its nature different from the customary employment of the salvor, and the danger is not certain and extreme, an allowance of a lump sum bearing some relation to the cost of the serv-

ice, if rendered under a contract, is fairer than a percentage of the value of the salved property.

While we are inclined to think that the awards in the present case are somewhat more than we can see that the facts called for, we cannot say they are excessive. Great weight is to be given to the conclusion of the learned District Judge, experienced in admiralty and familiar with the special perils of the locality where the barges were exposed, and who had the advantage of having seen the witnesses. The rule is not to disturb the awards in such cases unless clearly and greatly excessive. This we do not think was so in this case, and the decree is affirmed.